IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MONROE MOTOR PRODUCTS CORP. on behalf of itself and all others similarly situated,<br><br>      Plaintiff,<br><br>CHAMPION LABORATORIES, INC., UNITED COMPONENTS, INC., [UIS, INC.], THE CARLYLE GROUP, PUROLATOR FILTERS N.A. L.L.C., BOSCH U.S.A., MANN + HUMMEL U.S.A., ARVINMERITOR INC., HONEYWELL INTERNATIONAL, WIX FILTRATION PRODUCTS, AFFINIA GROUP INC., CUMMINS FILTRATION INC., CUMMINS INC., THE DONALDSON COMPANY, BALDWIN FILTERS, INC., HASTINGS PREMIUM FILTERS, and CLARCOR INC.,<br><br>      Defendants. | Case No._____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>FILED COPY: MAY 22, 2008<br>08CV2992 EDA<br>JUDGE HART<br>MAGISTRATE JUDGE KEYS |

  Monroe Motor Products Corp. ("Plaintiff"), by and through its undersigned counsel, brings this action for treble damages and costs of suit under the antitrust laws of the United States against Defendants (defined below) and, upon personal knowledge with respect to its own acts and upon information and belief with respect to all other matters, alleges in its complaint as follows:

## SUMMARY OF CLAIMS

  1.  This case is brought as a class action on behalf of all individuals and entities that purchased aftermarket oil, air, fuel and transmission filters ("Filters") in the United States directly from Defendants (as listed below) because Defendants agreed to fix, raise, maintain,

and/or stabilize prices, rigs bids and allocate customers for Filters in the United States in violation of the Sherman Act.

2.  Parts of this case also arise as an outgrowth of a lawsuit pending against a former employee of two of the Defendants, who, most recently, was a National Accounts and Division Sales Manger for Defendant Champion Laboratories, Inc. In that pending suit, *Champion Laboratories, Inc. v. Burch*, 06-CV-4031 (S.D. Ill.) (JPG), the former employee, filed a sworn affidavit executed on March 25, 2008, in which the allegations of anticompetitive conduct are detailed. These allegations are described below.

3.  As a result of Defendants' unlawful conduct, Plaintiff and the Class (defined below) paid and continue to pay supracompetitive prices and sustained antitrust injury to their business or property.

4.  Plaintiff brings this lawsuit as a class action on behalf of direct purchasers of Filters who purchased Filters in the United States from Defendants during the Class Period. Plaintiff brings this action under Section 1 of the Sherman Act, seeking to enjoin this anticompetitive conduct and to recover damages suffered by the Class.

## JURISDICTION AND VENUE

5.  Plaintiff brings this action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to prevent and restrain violations thereof and to recover treble damages and the costs of this suit, including reasonable attorneys' fees, for injuries sustained by Plaintiff and the Class as a result of Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, as alleged in this Complaint.

6.  This Court has jurisdiction over the claims alleged herein under 28 U.S.C. §§ 1331 and 1337.

7.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. §§ 15(a) and 22 because during the Class Period, Defendants resided, transacted business, were found, or had agents in this district, and because a substantial portion of the affected interstate trade and commerce described herein has been carried out in this district.

## INTERSTATE COMMERCE

8.      Defendants' and their co-conspirators' actions, as described in this Complaint, are within the flow of and substantially affect interstate commerce.

9.      During the Class period, Defendants manufactured and sold and/or distributed substantial quantities of Filters in a continuous and uninterrupted flow of interstate and international commerce to customers located throughout the United States.

## THE PARTIES

10.     Plaintiff Monroe Motor Products Corp. is a corporation headquartered in New York. Monroe Motor Products Corp. purchased Filters in the United States directly from one or more of the Defendants during the Class Period.

11.     Defendant Champion Laboratories, Inc. is a corporation headquartered in Albion, Illinois, with a business address at 200 S. Forth St., Albion, IL 62806. Champion Laboratories, Inc. manufactured and sold Filters in the United States during the Class Period.

12.     Defendant UIS, Inc. is a privately-held corporation headquartered in New Jersey, with a business address at 15 Exchange Place, Suite 1120, Jersey City, NJ 07302. Prior to June 2003, Champion Laboratories was owned by UIS, Inc. and UIS Industries, Inc.

13.     Defendant United Components, Inc. ("UCI") is a Delaware corporation headquartered in Evansville, Indiana, with a business address at 14601 Highway 41 N., Evansville, IN 47725-9357. Champion Laboratories, Inc. is a wholly-owned subsidiary of UCI. UCI is an indirect wholly-owned subsidiary of UCI Holdco, Inc. ("UCI Holdco").

14. Defendant The Carlyle Group ("Carlyle") is a private investment group partnership based in Washington, District of Columbia, with a business address at 1001 Pennsylvania Ave NW #220, Washington, DC 20004-2505. Through its affiliates, Carlyle Partners III, L.P. and CP Coinvestment, L.P., Carlyle owns 91.6% of UCI Holdco's common stock. Additionally, UCI's entire board has been designated by affiliates of Carlyle and the majority of board members are affiliated with Carlyle. Carlyle affiliates also control the appointment of UCI management. (Champion Laboratories, Inc., UCI, UIS, Inc., and Carlyle are herein collectively referred to as "Champion.")

15. Defendant Purolator Filters N.A. L.L.C. is a limited liability corporation with its principal place of business in Fayetteville, North Carolina, and a business address at 3200 Natal St., Fayetteville, NC 28306-2845. Purolator Filters N.A. L.L.C. manufactured and sold Filters in the United States during the Class Period. Purolator Filters N.A. L.L.C. is a joint venture between Bosch U.S.A. and Mann + Hummel U.S.A., Inc.

16. Defendant Bosch U.S.A. ("Bosch") is a company headquartered in Broadview, Illinois, with a business address at 38000 Hills Tech Drive, Farmington Hills, MI 48331. Bosch manufactured and sold Filters in the United States during the Class Period.

17. Defendant Mann + Hummel U.S.A. is a company headquartered in Portage, Michigan, with a business address at 6400 S. Sprinkle Road, Portage, MI 49002.

18. Defendant ArvinMeritor Inc. is a corporation headquartered in Troy, Michigan, with a business address at 2135 West Maple Road, Troy, MI 48084. Prior to April 2006, Purolator Filters N.A. L.L.C. was owned by ArvinMeritor Inc. (Purolator Filters N.A. L.L.C., Bosch (in its role in the Purolator Filters joint venture), Mann + Hummel U.S.A., and ArvinMeritor Inc. are herein collectively referred to as "Purolator.")

19.     Defendant Honeywell International ("Honeywell International") is a Delaware corporation headquartered in Morristown, New Jersey, with a business address at 100 Columbia Road, Morristown, NJ 07962. Honeywell International manufactured and sold Filters in the United States during the Class Period, through the Honeywell Consumer Products Group ("Honeywell Consumer Products") of its Transportation Systems unit, through the FRAM business unit. FRAM is located in Danbury, Connecticut. (Honeywell International, Honeywell Consumer Products, and FRAM are herein collectively referred to as "Honeywell.")

20.     Defendant Wix Filtration Products ("Wix") is a limited liability company headquartered in Gastonia, North Carolina, with a business address at One Wix Way, Gastonia, NC 28054. Wix manufactured and sold Filters in the United States during the Class Period.

21.     Defendant Affinia Group Inc. is a Delaware corporation headquartered in Ann Arbor, Michigan, with a business address at 1101 Technology Drive, Ann Arbor, MI 48108. Wix is a wholly-owned subsidiary of Affinia Group Inc. (Wix and Affinia Group Inc. are herein collectively referred to as "Wix.")

22.     Defendant Cummins Filtration Inc. ("Cummins Filtration") is headquartered in Nashville, Tennessee, with a business address at 2931 Elm Hill Pike, Nashville, TN 37214. Cummins Filtration manufactured and sold Filters in the United States during the Class Period.

23.     Defendant Cummins Inc. is an Indiana corporation, headquartered in Columbus, Indiana, with a business address at 500 Jackson Street, Box 3005, Columbus, IN 47202. Cummins Filtration is a wholly-owned subsidiary of Cummins Inc. (Cummins Filtration and Cummins Inc. are herein collectively referred to as "Cummins.")

24.     Defendant The Donaldson Company ("Donaldson") is a Delaware corporation headquartered in Minneapolis, Minnesota, with a business address at 1400 West 94th St.,

Minneapolis, MN 55431. Donaldson manufactured and sold Filters in the United States during the Class Period.

25. Defendant Baldwin Filters, Inc. ("Baldwin") is a corporation headquartered in Kearney, Nebraska, with a business address at 4400 E. Hwy. 30, Kearney, NE 68848-6010. Baldwin manufactured and sold Filters-in the United States during the Class Period.

26. Defendant Hastings Premium Filters ("Hastings") is a corporation headquartered in Kearney, Nebraska, with a business address at 4400 E. Hwy. 30, Kearney, NE 68848-6010. Hastings manufactured and sold Filters-in the United States during the Class Period.

27. Defendant Clarcor Inc. is a Delaware corporation headquartered in Franklin, Tennessee, with a business address at 840 Crescent Centre Drive, Suite 600, Franklin, TN 37067. Baldwin and Hastings are wholly-owned subsidiaries of Clarcor Inc. (Baldwin, Hastings, and Clarcor Inc. are herein collectively referred to as "Clarcor.")

28. Champion, Purolator, Bosch, Honeywell, Wix, Donaldson, Cummins, and Clarcor are collectively referred to herein as "Defendants."

## UNNAMED CO-CONSPIRATORS

29. On information and belief, other persons, corporations and entities not named herein are co-conspirators with Defendants in their unlawful restraint of trade. These other co-conspirators have facilitated, participated in, and/or communicated with others regarding the conspiracy.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action against Defendants under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

> All persons and entities (excluding Defendants, their predecessors, parents, subsidiaries, affiliates and co-conspirators, and government entities) who purchased Filters in the United States directly from the Defendants or any of their predecessors, parents, subsidiaries, or affiliates, at any time during the period from January 1, 1999 to the present.

31.     Plaintiff does not know the exact number of Class members because such information is in the exclusive control of Defendants or their co-conspirators due to the nature of the trade and commerce involved, however, Plaintiff believes that Class members are sufficiently numerous and geographically dispersed so that joinder of all Class members is impracticable.

32.     Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of the Class members and Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is a direct purchaser of Filters and its interests are consistent with and not antagonistic to those of the other members of the Class. In addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

33.     There are questions of law or fact common to the Class:

    (a)     Whether Defendants and their co-conspirators engaged in a contract, combination, or conspiracy to fix, raise, maintain or stabilize prices of Filters, rig bids, or allocate customers for Filters;

    (b)     Whether Defendants' contract, combination or conspiracy as alleged in this Complaint violated Section 1 of the Sherman Act, 15 U.S.C. § 1;

    (c)     Whether the conduct of Defendants and their co-conspirators caused injury to the business or property of Plaintiff and the other members of the Class;

(d)     The effect of Defendants' conspiracy on the prices of Filters sold to purchasers in the United States during the Class Period;

(e)     The appropriate nature of class-wide equitable relief; and

(f)     The appropriate measure of damages sustained by Plaintiff and other members of the Class.

34.     These questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

35.     A class action is superior to other methods for the fair and efficient adjudication of this controversy. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, effectively, and without the duplication of effort and expense that numerous individual actions would engender, Class treatment will also permit the adjudication of relatively small claims by Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This Class action presents no difficulties in management that would preclude maintenance as a class action.

36.     Finally, the Class is readily definable and is one for which records likely exist in the files of Defendants and their co-conspirators.

## INDUSTRY BACKGROUND

37.     Fuel filters screen out dirt and rust particles from vehicles' fuel lines. They are found in most internal combustion engines and improve a vehicle's performance and efficiency.

38.     Air filters prevent abrasive particulates from entering the engine's cylinders and are mostly made of pleated paper. Air filters are used to keep the air clean, such as in ventilation systems, air conditioners and engines.

8

39. Transmission filters keep harmful contaminants out of hydraulic systems. They slow down wear and also protect hydraulic control valves against scoring and sticking by trapping metal chips from hard parts as well as fine material that results from wear of the hydraulic clutch facings and bands. In addition, if a major part fails inside the transmission, the filter may prevent pieces of that part from contributing to a more catastrophic transmission failure.

40. Oil filters are used to decontaminate the oil in nearly all vehicles sold in the United States. Oil filters are necessary for the longevity and performance of vehicle engines.

41. Filters are ordinarily detachable units that require regular service or replacement. They are typically fungible products. For example, someone looking for an oil filter to fit a 2007 Ford Explorer could purchase any of the filters designed to fit that particular make and model. In fact, some manufacturers even allow customers to search for replacement filters using their competitors' product numbers – a clear sign of substitutability.

42. Filter manufacturers sell primarily to original equipment manufacturers (*i.e.*, vehicle manufacturers for installation of Filters into new vehicles on the production floor) and "aftermarket" sellers (*i.e.*, sellers for professional or self-installation of replacement Filters).

43. The allegations contained herein involve the Filters aftermarket, which is comprised of retailers, who sell primarily to vehicle owners who replace their own filters; distributors, who sell to professional mechanics and garages; heavy-duty vehicle owners (*i.e.*, truck owners); and manufacturer service facilities.

44. Defendants are the primary manufacturers of aftermarket Filters in the United States. Defendants Champion, Honeywell, Purolator, and Wix control approximately 90% of the automotive Filters aftermarket. Defendants Cummins, Donaldson, and Baldwin are the dominant manufacturers in the heavy-duty Filters aftermarket.

45. Annual revenues for the Filters aftermarket are approximately $3-$5 billion in the United States.

## **DEFENDANTS' UNLAWFUL CONDUCT**

46. During the Class Period, Defendants and their co-conspirators conspired, contracted, or combined to fix, raise, maintain, or stabilize prices, rig bids, and allocate customers for Filters in the United States. They accomplished this through, among other methods, in-person meetings at industry trade shows and other locations, and exchanges of confidential communications regarding pricing.

47. The purpose of these secret, conspiratorial meetings, discussions, and communications was to ensure that all of the Defendants agreed to participate in and implement an unlawful, continuing price-fixing scheme.

48. As a result of their unlawful agreement, Defendants implemented at least three coordinated price increases, rigged bids, and allocated customers for Filters during the Class Period.

49. In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, including:

(a) Exchanging pricing information for Filters sold in the U.S.;

(b) Exchanging Filters price increase information before publishing such information to consumers or the general public;

(c) Engaging in discussions regarding Filters pricing;

(d) Authorizing the participation of employees in conspiratorial Filters pricing discussions;

(e) Generally agreeing to fix, raise and/or maintain Filters pricing in the U.S. and to allocate Filters customers in the U.S.

50. At least as early as 1999, Defendants and their co-conspirators had numerous conversations with each other and exchanged information regarding pricing and customers. This conspiratorial conduct resulted in an unlawful agreement to fix, raise, maintain, or stabilize prices, rig bids, and allocate customers for Filters in the United States.

51. Pursuant to their unlawful agreement, Defendants issued similar price increases for Filters during the Class Period, including in 1999, early 2004 and late 2004/early 2005. These price increases were approximately 4-6% each.

52. Defendants engaged in extensive in-person meetings to further their anticompetitive activities, including contemplated price increases. Many of these conversations occurred at industry meetings, including the annual Filter Manufacturers Council, which appear to have been used as a vehicle to further the anticompetitive purposes of Defendants' unlawful conspiracy.

53. For example, Defendants discussed their respective companies' contemplated price increases in May 1999 at a meeting of filter industry participants at the Heritage Show in Nashville, Tennessee. At this meeting, and at other industry gatherings around this time, Defendants agreed, on behalf of their respective companies, to raise Filters prices.

54. Pursuant to this agreement, Defendants subsequently did raise Filters prices on numerous occasions.

55. On January 19, 2006, William G. Burch, former employee of both Purolator and Champion, filed a wrongful termination action against Champion in Oklahoma state court, alleging that he had been wrongfully terminated from his position with Champion for knowing about, and subsequently reporting to federal authorities, the antitrust violations alleged herein. This case was removed to federal court and transferred to the Southern District of Illinois for

consolidation for a subsequently filed action, *Champion Labs., Inc. v. Burch*, 06-DV-4031 (S.D. Ill.) (JPG), which is currently set for trial in September 2008.

56.　On March 25, 2008, Burch, who had been a National Accounts and Division Sales Manager for Champion, executed a sworn affidavit in connection with the *Champion Labs.* Case. This affidavit, made on the basis of Burch's personal knowledge, states as follows:

> (a)　Burch "became aware that Champion was involved in activities with Champion's competitors that constitute price-fixing. For example, Champion provided information concerning price increases to competitors before it provided that information to consumers or the general public. Champion was also given advance information about price increases by its competitors." (Further details are apparently set forth in a confidential mediation statement filed under seal, dated September 21, 2007.)
>
> (b)　Burch also stated that while working for Champion, "[he] was directed by Champion to conduct discussions regarding 'pricing' with employees of competitors of Champion. [He] refused to conduct those discussions."

57.　Mr. Burch alleged specific acts such as the following:

(a) On June 28, 1999, a Purolator executive faxed an executive at Honeywell a letter which announced a 6% increase on all Purolator branded filters effective August 15, 1999, but did not send a price increase notification to Purolator's customers until July 1999;

(b) At a trade convention called the Heritage Show in May 1999, representatives of Defendants agreed in person, on behalf of their respective employers, to raise prices for Filters, and Defendants later raised prices in accordance with the wrongful agreements reached at the Heritage Show; and

(c) In February 2004, Champion's President informed his sales team that Champion was about to raise prices and told them to make sure Champion's competitors were aware of the increase and adjusted their prices accordingly, both in timing and amount, pursuant to wrongful agreements previously reached, which the employees accomplished by meeting with Defendants' representatives.

58. Defendants' conduct during the Class Period in collusively fixing, increasing, maintaining, or stabilizing prices, rigging bids, and/or allocating customers foreclosed price competition in order to maintain supracompetitive prices for their Filters.

59. Absent their coordinated activity, Defendants would have been forced to compete on price, or risk losing the significant business of their Filter customers, including that of Plaintiff and other class members.

60. The likelihood that Defendants would have moderated their price increases or, indeed, decreased their prices is particularly strong in the face of Champion's developments in filter technology, which have reduced the amount of steel – a principal raw ingredient – used in its Filters.

## FRAUDULENT CONCEALMENT

61. Plaintiff and other members of the Class had no knowledge of Defendants' unlawful self-concealing conspiracy and could not have discovered the contract, combination, or conspiracy at an earlier date by the exercise of due diligence because of the deceptive practices and secrecy employed by Defendants to avoid detection of, and to fraudulently conceal, their contract, combination, or conspiracy.

62. As a result of Defendants' fraudulent concealment of their conspiracy, the applicable statute of limitation has been tolled.

## ANTITRUST INJRUY TO PLAINTIFF AND THE CLASS

63. The contract, combination and conspiracy alleged herein had and is having the following effects, among others:

(a) Filters prices charged to Plaintiff and the Class have been raised, fixed, maintained, and/or stabilized at supracompetitive levels;

(b) Plaintiff and the Class have been deprived of the benefits of a free and competitive market for Filters; and

(c) Competition in establishing the prices paid in the U.S. has been unlawfully restrained, suppressed and/or eliminated.

64. By reason of the violations of Section 1 of the Sherman Act and Section 4 of the Clayton Act, Plaintiff and the members of the Class have sustained injury to their business and/or property by paying supracompetitive prices for Filters.

## CLAIM FOR RELIEF

**(Sherman Act Section 1-Horizontal Price-Fixing Against All Defendants)**

65. Plaintiff repeats and realleges each and every allegation of this complaint as if fully set forth herein.

66. Beginning at least as early as January 1, 1999 and continuing thereafter through the present, the exact dates being unknown to Plaintiff, Defendants contracted, combined or conspired to fix, raise, maintain, or stabilize prices, rig bids, and/or allocate customers of Filters in the United States, the purpose and effect of which is to maintain supracompetitive prices for their Filters. This conspiracy is illegal *per se* under Section 1 of the Sherman Act, 15 U.S.C. § 1.

67. This conspiracy consists of a continuing understanding and concert of action among Defendants to coordinate their Filter prices.

68. This conspiracy has foreclosed and restrained competition among Defendants and caused Plaintiff and the Class to pay supracompetitive prices for Defendants' Filters.

69. As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, as alleged herein, Plaintiff and other members of the Class have been injured in their business and property in an amount not presently known in that they paid more during the

Class Period for Filters than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff, individually and on behalf of the Class proposed in this Complaint, respectfully requests the following relief:

A. That the Court certify the Class pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), and adjudge Plaintiff to be an adequate representative thereof;

B. That Defendants' unlawful combination, contract or conspiracy as alleged in this Complaint be declared, adjudicated and decreed a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1;

C. That Plaintiff and the Class recover damages against Defendants and their co-conspirators, jointly and severally, in an amount to be trebled in accordance with the antitrust laws pursuant to 15 U.S.C. § 15(a); and

D. That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner, continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination, or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and

E. That Plaintiff and the Class be awarded expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law;

F. That Plaintiff and the Class be awarded pre judgment and post judgment interest at the highest legal rate to the extent provided by law; and

G. That Plaintiff be awarded such additional relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff demands a trial by jury of all issues triable by jury.

Dated: May 22, 2008

**Respectfully submitted**

By: /s/ Carol V. Gilden

Carol V. Gilden
Cohen, Milstein, Hausfeld & Toll, PLLC
190 South LaSalle Street, Suite 1705
Chicago, IL 60603
Tel: 312-357-0370
Fax: 312-357-0369

Michael D. Hausfeld
Megan E. Jones
Besrat J. Gebrewold
Cohen, Milstein, Hausfeld & Toll, PLLC
1100 New York Avenue, N.W., Suite 500
Washington, D.C. 20005
Tel.: 202-408-4600
Fax: 202-408-4699

Michael Lehmann
Cohen, Milstein, Hausfeld & Toll, PLLC
One Embarcadero Center, Suite 2440
San Francisco, CA 94111
Tel: 415-229-2080
Fax: 415-986-3643

Robert G. Eisler
Cohen, Milstein, Hausfeld & Toll, PLLC
150 East 52nd Street, 30th Floor
New York, New York 10022
Tel: 212-838-7797
Fax: 212- 838-7745

Arthur N. Bailey
Arthur N. Bailey & Associates
111 West Second Street, Suite 4500
Jamestown, NY 14701
Tel: 716-664-2967
Fax: 716-664-2983


Allan Steyer
Steyer Lowenthal Boodrookas
     Alvarez & Smith
One California Street
Third Floor
San Francisco, CA 94111
Tel: 415-421-3400
Fax: 415-421-2234

*Counsel for Plaintiffs*